McCollom, Appellant, vs. Minneapolis, St. Paul & Sault Ste. Marie Railway Company, Respondent.

Same, Respondent, vs. Vollmar & Below Company, imp., Appellant.

*January 30—February 18, 1913.*

*Sales: Delivery f. o. b.: When title passes: Parties: Interpleader: Affirmative relief on cross-complaint.*

1. Lumber to be manufactured at a certain mill was sold at specified prices "f. o. b. cars the mill," and certain advances were made by the vendee. Inspection was "to be made at time of loading and same to be final." While a car was being loaded under inspection for the vendee, the vendor stopped all further loading and the vendee's inspector thereupon billed the car, then containing 9,000 feet, for shipment to the vendee. Afterwards the vendor unloaded the car, and later reloaded it with the same lumber and 1,000 feet additional and billed it for shipment to himself at another place. The railway company delivered the car to the vendee. *Held,* that under the contract of sale the title to the 9,000 feet of lumber passed to the vendee as soon as it was loaded, and the subsequent unloading and reloading thereof did not impair such title; also that the loading of the additional 1,000 feet into the car operated to pass title thereto to the vendee.

**2.** The vendor brought an action against the railway company for damages for nondelivery of said lumber to him. The vendee was interpleaded as a defendant and filed a cross-complaint to recover from the plaintiff the difference between the value of the lumber received and the advances made on the contract. It appeared that plaintiff had disposed of the remaining lumber and thus disabled himself to comply with the contract. *Held*, that the affirmative relief asked in the cross-complaint might properly be granted against the plaintiff under secs. 2610, 2656a, Stats.

APPEALS from a judgment of the circuit court for Washburn county: FRANK A. ROSS, Circuit Judge. *Affirmed on plaintiff's appeal; reversed on the cross-appeal.*

By an agreement dated March 7, 1910, one George Hewitt sold to *Vollmar & Below Co.* all of certain varieties of "lumber to be manufactured by [him] during the season of 1910 at Roesler's mill near Ladysmith, Wis.," at specified prices for the various varieties. The agreement further provides:

"All of said lumber to be manufactured into standard sizes in a careful workmanlike manner and in accordance with specifications furnished by the party of the second part. Inspection to be made at time of loading and same to be final. The party of the second part [George Hewitt] agrees to have all lumber covered by this contract shipped out by Dec. 31st, 1910, or agree to pay for same on estimate."

A payment of $1,200 was to be made upon the signing and delivery of the contract, $1,600 on April 10, 1910, and $1,600 on May 10, 1910. The vendor was to give his notes for these sums, and these notes were "to be returned upon the shipment of lumber having reached an equal amount in dollars and cents." By an agreement dated April 1, 1910, Hewitt assigned to the plaintiff this contract and a contract for the sawing and piling of lumber, and the plaintiff assumed Hewitt's liabilities under these contracts and the liability of Hewitt on a claim of the Arpin Lumber Co. for trespass. Prior to any delivery of lumber under the contract the plaint-

iff and the *Vollmar & Below Co.* had some negotiations seeking to modify the Hewitt agreement.

Early in June, 1910, after four cars had been loaded with lumber at Bass Lake, where the mill was situated, and while the fifth car was being loaded under the inspection of *Vollmar & Below Co.,* the plaintiff stopped the loading of the fifth car, being car No. 107680, because the *Vollmar & Below Co.* refused to make further advances. The railway company had no agent at Bass Lake, and upon plaintiff's refusal to further load lumber the inspector for *Vollmar & Below Co.,* as usual, made out a shipping bill for car No. 107680 to *Vollmar & Below Co.* at Kolz, Illinois, and mailed it to the railway agent at Ladysmith. The inspector then left Bass Lake. This shipping bill reached the agent at Ladysmith June 27, 1910. After the departure of the inspector the plaintiff unloaded the lumber from car No. 107680, and thereafter reloaded this lumber into the same car with 1,000 additional feet of lumber. He then made out a shipping bill for the car, consigning it to himself at Minneapolis, Minnesota. He delivered the shipping bill to the conductor of a way freight and the car was taken to Ladysmith. Neither the railway company nor the *Vollmar & Below Co.* knew what the plaintiff had done in the matter of unloading and reloading the car. Upon learning at Ladysmith of the double billing, the railway, upon inquiry of the *Vollmar & Below Co.* as to the true destination of the car, were directed to ship it to Kolz, Illinois. The car was accordingly delivered by the railway company to *Vollmar & Below Co.* at Kolz, Illinois, the plaintiff not having been informed of what was done.

The plaintiff brought action against the railway company for damages for the nondelivery of the car of lumber to him. In the circuit court for Washburn county, upon an appeal from the judgment of the municipal court in plaintiff's favor, the railway company asked that the *Vollmar & Below Co.* be

438 SUPREME COURT OF WISCONSIN. [Feb.

made a defendant in the action. The *Vollmar & Below Co.* answered alleging that the lumber in car No. 107680 belonged to it, and filed a cross-complaint by which it seeks to recover the difference between the value of the lumber received by it from the plaintiff, amounting to $775.26, and the sum of $1,200 paid by it to Hewitt on the contract at the time the contract was made.

The court found that the facts set out in the cross-complaint of the *Vollmar & Below Co.* were not properly pleadable as a cross-complaint and that the plaintiff had not waived objection thereto, that the carload of lumber in controversy belonged to the *Vollmar & Below Co.*, and that the defendants were entitled to a nonsuit. Judgment was entered against the plaintiff for costs in favor of the railway company and for costs in favor of the *Vollmar & Below Co.* The *Vollmar & Below Co.* appeals from that part of the judgment which dismisses its cross-complaint, and the plaintiff appeals from so much of the judgment as is in favor of the defendants.

For the plaintiff the cause was submitted on the brief of *James Robbins.*

For the defendant railway company there was a brief by *Clarence C. Coe* and *Arthur E. Coe;* for the defendant *Vollmar & Below Company* there was a brief by *Goggins & Brazeau;* and the cause was orally argued by *Theo. Brazeau.*

SIEBECKER, J. The issue between the plaintiff and the railway company raises the question of title to and ownership of the carload of lumber which the plaintiff consigned to himself at Minneapolis, Minnesota, after 9,000 feet thereof had been loaded into the car under the inspection of the *Vollmar & Below Co.*, pursuant to their contract for the purchase of the lumber to be manufactured at Roesler's mill during the season of 1910. It is undisputed that this car was being loaded for the *Vollmar & Below Co.* when the plaintiff inter-

cepted all further loading, that the company's representative billed the car, thus loaded, for shipment to the company at Kolz, Illinois, and that he did nothing to surrender any of the company's rights to the lumber. It is evident from the terms of the contract of purchase that the *Vollmar & Below Co.* acquired title upon compliance with the provision of the contract of purchase, that it was to be furnished "f. o. b. cars the mill." These terms import delivery free on board of cars and fix the time when title fully passed to the *Vollmar & Below Co.* *Vogt v. Schienebeck,* 122 Wis. 491, 100 N. W. 820. Under the circumstances shown by the evidence, title to the 9,000 feet of lumber, contained in the car when the company's representative billed it, was in the *Vollmar & Below Co.,* and plaintiff's subsequent unloading and reloading thereof in no way impaired its ownership. The loading of an additional one thousand feet of lumber into the car, under the circumstances, operated to pass title thereto to the *Vollmar & Below Co.,* as part of the lumber they had purchased. The plaintiff had no authority to direct shipment thereof to himself. The railway company properly transported it as directed by the *Vollmar & Below Co.* and hence is not liable to the plaintiff for its value.

The *Vollmar & Below Co.,* upon motion of the railway company, was made a party defendant, to enable the court to determine the rights of all the parties interested in the subject of the action, namely, the lumber in controversy. These rights arose from the contract between the plaintiff and the *Vollmar & Below Co.* for the purchase and sale of lumber. Under the facts and circumstances of the transaction, the interests of all the parties, the right to have the *Vollmar & Below Co.* interpleaded as a defendant, and the granting of relief upon its cross-complaint, as against the plaintiff, are governed by the provisions of secs. 2610 and 2656a, Stats. As declared in *Hemenway v. Beecher,* 139 Wis. 399, 121 N. W. 150, these statutes "are very broad in their terms and

440 SUPREME COURT OF WISCONSIN. [Feb.

McCollom v. Minneapolis, St. P. & S. S. M. R. Co. 152 Wis. 435.

were intended to give courts plenary powers not only to call in new parties, but to mould the pleadings and dispose of all branches of a controversy in one action after having obtained jurisdiction of the necessary parties." The objects of the statutes are to gather up all the issues germane to the main controversy that may arise between the parties plaintiff and defendant or between the defendants, and finally to determine the same, to avoid circuity and multiplicity of actions. *Warren Webster & Co. v. Beaumont H. Co.* 151 Wis. 1, 138 N. W. 102, and cases there cited.

The court found that the *Vollmar & Below Co.* had advanced $1,200 on the purchase price of the lumber purchased from the plaintiff, that it received from the plaintiff lumber of the value of $775.26 to apply thereon, leaving a balance of such advancement of $424.74 due the *Vollmar & Below Co.* It also appears that the plaintiff had disposed of all the remaining lumber and thus disabled himself to comply with the contract of sale to the *Vollmar & Below Co.* It is therefore obvious that the *Vollmar & Below Co.,* on account of this breach of the agreement, had a demand against the plaintiff for this balance. The issue thus presented by the pleadings clearly involved the right to the lumber embraced in the contract, and affected the transaction and property which was the subject matter of the action, and was therefore, upon defendant's cross-complaint, a proper subject for determination. It therefore was error for the court to deny the *Vollmar & Below Co.* affirmative relief against the plaintiff upon its cross-complaint. The plaintiff showed no cause of action under his alleged breach of contract by the defendant. The *Vollmar & Below Co.* is entitled to judgment against the plaintiff for the sum of $424.74, with interest from the time plaintiff refused compliance with the contract of sale, and for its costs.

*By the Court.*—That part of the judgment dismissing plaintiff's complaint and awarding defendants costs against

the plaintiff is affirmed; and that part of the judgment dismissing the cross-complaint of the *Vollmar & Below Co.* is reversed, with directions that the circuit court award judgment to the *Vollmar & Below Co.*, as indicated in the opinion, upon its cross-complaint and the facts found.