## SETTON v. EBERLE-ALBRECHT FLOUR CO.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1919. Rehearing Denied July 22, 1919.)

### No. 5213.

1. SALES ⊜═►418(2)—BREACH OF CONTRACT TO DELIVER—MEASURE OF DAMAGES —"PLACE OF DELIVERY."

When contracts for the sale of chattels are broken by vendor failing to deliver, the measure of damages is the difference between the contract price and the market price of the article at the time when and the place where it should have been delivered, with interest; the place of delivery meaning the place where title passes.

2. SALES ⊜═►418(12)—BREACH OF CONTRACT—MEASURE OF DAMAGES—RESALE CONTRACTS.

If a buyer of chattels has, in advance, made a contract for resale, and discloses such fact to his vendor, who undertakes to furnish the commodity and deliver it at a specified time and place, so that the buyer may fulfill his resale contract, but the vendor fails to do so, he will be liable on the basis of the profits the vendee would have realized on his contract of resale.

3. SALES ⊜═►418(12)—BREACH OF CONTRACT TO DELIVER—MEASURE OF DAMAGES —"C. I. F."

Where a flour merchant in Alexandria, Egypt, brought an action for breach of a contract to buy of a corporation in St. Louis, Mo., "2,000 bags 'White Owl' at 23/6 per 280 lbs. c. i. f. Alexandria, all August shipment," but failed to allege special damages, or facts showing an exception to the general rule of damages, the measure of damages was the difference between the contract price and the market price at St. Louis, and not the difference between the contract price and the market price in Alexandria; the contract not being one technically for resale, and the letters "c. i. f." merely meaning "cost, insurance, and freight."

Carland, Circuit Judge, dissenting.

---

⊜═►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Jacques Setton, doing business as Jacques Setton & Co., against the Eberle-Albrecht Flour Company, for breach of contract. Judgment for defendant on a directed verdict, and plaintiff brings error. Affirmed.

Frank H. Sullivan, of St. Louis, Mo. (Clement A. Lawler, of Kansas City, Mo., and George F. Haid, of St. Louis, Mo., on the brief), for plaintiff in error.

Rhodes E. Cave, of St. Louis, Mo. (A. G. Eberle and George H. Williams, both of St. Louis, Mo., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. The plaintiff, Setton, a flour merchant of Alexandria, Egypt, brought this action against the defendant, the Eberle-Albrecht Flour Company, of St. Louis, Mo., for a breach of the following contract, dated July 11, 1914:

"We offer to buy of you 2,000 bags 'White Owl' at 23/6 per 280 lbs. c. i. f. Alexandria, all August shipment."

This offer was accepted by cable. The contract was wholly by correspondence and cable. The defendant failed to deliver the flour, as performance became difficult by the breaking out of the World War early in August. Probably the principal cause of the breach was obstruction to shipping facilities. It may also be that enhancement of price was a factor. It is not claimed that either of these causes was legal justification for the breach. In the trial court the case turned wholly on the proper measure of damages; plaintiff insisting that they should be based on the difference between the contract price and the market price at Alexandria, and the defendant on the difference between the contract price and the market price at St. Louis. The trial court held with defendant, and excluded evidence as to prices in Egypt, and, as plaintiff offered no evidence of market price at St. Louis, it directed a verdict in favor of defendant at the conclusion of plaintiff's case, and entered judgment accordingly. Plaintiff brings error to review that judgment.

Some time was spent in the trial court explaining the letters c. i. f. They mean "cost, insurance, and freight." Their significance was explained by Lord Justice Blackburn, in Ireland v. Livingston, L. R. 5 H. L. 395, 406, in language quoted in Williston on Sales, page 408, and in the fourth edition of Benjamin on Sales, section 891. The Lord Justice concludes his statement as follows:

"In substance, therefore, the consignee pays, though in a different manner, the same price as if the goods had been bought and shipped to him in the ordinary way."

The duty which this feature of the contract imposed upon the seller has no bearing upon the question now under review.

[1] The general rule as to damages is stated by Sedgwick, at section 734, as follows:

"When contracts for the sale of chattels are broken by the vendor failing to deliver the property according to the terms of the bargain, it seems to be well settled, as a general rule, both in England and the United States, that the measure of damages is the difference between the contract price and the market value of the article at the time * * * when and the place where it should have been delivered, with interest."

The same rule is expressed in slightly different language, and a multitude of cases cited, in the fourth edition of Sutherland on Damages, at section 651.

The words "place of delivery" in the rule, mean the place where title passes. If the goods are to be shipped by carrier, this will be the place at which they are delivered to the carrier. If there is no local market at that place, the words have been enlarged to include places in the same vicinity where there is a market; allowances being made for freight. The rule as stated by Sedgwick has been adopted by the federal courts (Grand Tower Co. v. Phillips, 23 Wall. 471, 23 L. Ed. 71; Globe Refining Co. v. Landa Cotton Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171; Salmon v. Helena Box Co., 147 Fed. 408, 412, 413, 77 C. C. A. 586), and by all state courts entitled to speak with authority on such a subject (Cahen v. Platt, 69 N. Y. 348, 25 Am. Rep. 203; Rahm v. Deig, 121 Ind. 283, 23 N. E. 141). An examination of these authorities will show that using the market price at the place of ultimate receipt by the consignee in measuring damages has resulted in a reversal in all ordinary mercantile transactions.

[2] To the general rule there is an exception, which is accurately expressed in Sutherland on Damages, section 662, page 2343, as follows:

"If the buyer has, in advance, made a contract for resale, and discloses that fact to his vendor, who undertakes to furnish the commodity and deliver it at a specified time and place, arranged with reference to enabling the buyer to fulfill his contract for resale, and the vendor fails to deliver the property, he will be liable for damages on the basis of the profits the vendee would realize upon his contract for such resale."

This exception is well illustrated and explained in Rahm v. Deig, 121 Ind. 283, 23 N. E. 141; Howard Supply Co. v. Wells, 176 Fed. 512, 100 C. C. A. 70; West Drug Co. v. Byrd, 92 Fed. 290, 293, 34 C. C. A. 351; Southern Flour & Grain Co. v. McGeehan, 144 Wis. 130, 128 N. W. 879.

Mere knowledge that goods are purchased for resale in the ordinary course of business will not take the transaction out of the general rule and place it under the exception. If that were not so, the exception would swallow up the general rule completely, for it is always known that, when goods are bought from a manufacturer by a broker or wholesaler, or by a retailer from a jobber, the buyer purchases for resale. To bring a case within the exception, the buyer must have an existing contract for resale at the time of the purchase, and must buy for the purpose of enabling himself to perform his obligations on the resale, and these features must be clearly explained to the seller, and he must enter into his contract for the purpose of enabling the buyer to perform his obligations under the contract of resale. The same result will follow if the buyer is acting as the agent of the seller,

as in Cook Mfg. Co. v. Randall, 62 Iowa, 244, 17 N. W. 510, and Mc-Cormick Harvesting Co. v. Jensen, 29 Neb. 102, 45 N. W. 160.

It will be found, upon a careful examination of authorities entitled to be considered, that in order to take a case out of the general rule there must be present some special feature, such as those to which we have adverted. Such special features must be sufficient to take the case out of the special title of Sales and place it under the general law of Contracts. Then the rule of Hadley v. Baxendale, 9 Exch. 341, as qualified by later decisions, may control. Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171. Mere knowledge that goods are purchased for resale is not sufficient to produce that result. One reason for this is that the market price at the place where the goods are to be resold carries the transaction one stage nearer the ultimate consumer than the original sale, and always shows a higher market value than that which controlled between the original buyer and seller. It would be manifestly unjust to measure the damages by a market value thus enhanced. This feature is well explained by Judge Adams, speaking for this court, in Salmon v. Helena Box Co., 147 Fed. 408, 412, 413, 77 C. C. A. 586.

[3] It is likewise true that all courts regard the damages, when they are measured by the exception, as special damages, and the facts showing that the exception ought to apply must be pleaded in the complaint. No such allegations are contained in the complaint in this case, and a reading of the correspondence between the parties convinces us that the facts would not justify such claim.

The ruling of the trial court was therefore right, and its judgment is affirmed.

CARLAND, Circuit Judge, dissents.